## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
DALE A. PAGE,                   )
                                )
              Plaintiff,        )
                                )
       v.                       )       Civil Action No. 12-CV-1606(KBJ)
                                )
OFFICER ASHLEY C. MANCUSO       )
and DISTRICT OF COLUMBIA,       )
                                )
              Defendants.       )
                                )
_____ )

## MEMORANDUM OPINION

Plaintiff Dale Page filed the instant amended complaint pursuant to 42 U.S.C.

§ 1983, alleging that both the District of Columbia and Officer Ashley Mancuso of the

D.C. Metropolitan Police Department violated his constitutional rights. Specifically,

Plaintiff contends that (1) Officer Mancuso violated the Fourth Amendment when she

arrested him unlawfully (Count I); (2) the District of Columbia was deliberately

indifferent to Plaintiff's over-detention and strip search in violation of his Fourth and

Fifth Amendment rights (Count II); and (3) the District of Columbia is directly liable

under the Fourth and Fifth Amendments for maintaining a custom and practice of strip

searches (Count III) and over-detention (Count IV). (First Amended Compl.

("Compl."), ECF No. 6, ¶¶ 54-69.)

Presently before the Court is Defendants' partial motion to dismiss. (Defs.'

Partial Mot. to Dismiss the Compl. ("Defs.' Mot."), ECF No. 7.) In that motion,

Defendants argue that the first three counts of the amended complaint must be

dismissed for failure to state a claim upon which relief can be granted. (*Id.* at 1.) At

the motion hearing, Defendants also argued that their partial motion to dismiss should be treated as a motion for summary judgment with respect to Plaintiff's false arrest claim (Count I), given that Plaintiff had submitted various documents—including the official arrest report—as part of his opposition. For the reasons that follow, the Court **GRANTS** Defendants' partial motion, dismissing Counts II and III of the amended complaint and entering summary judgment in favor of Defendants on Count I. A separate order will follow.

## I. BACKGROUND

### A. Facts Alleged In The Complaint

Plaintiff's amended complaint alleges the following facts. On July 26, 2009, Dale Page ("Plaintiff" or "Page") was involved in an argument with two men, Casey Lucas and Urian Murray, in the District of Columbia around 4:00 a.m. (Compl. ¶¶ 10-11.) Lucas punched Page in the nose, causing Page to bleed profusely and prompting Page to call the police. (*Id.* ¶¶ 11-13.) Lucas threatened to hit Page again, and then got into the front passenger's seat of Murray's vehicle. (*Id.* ¶¶ 13-14.)

Page alleges that while he was on his cellphone reporting the assault to a 911 dispatcher, Murray drove towards him, striking him with the car. (*Id.* ¶ 15.) Page allegedly flew into the windshield, flipped over the roof, and landed on the street behind the trunk of the car. (*Id.* ¶¶ 15-17.) According to Page, his conversation with the 911 dispatcher was recorded, and another eyewitness also called 911 to notify authorities and to report that Page was "breathing and unconscious." (*Id.* ¶ 18.) Because Murray and Lucas drove away, Page's complaint describes the incident as a

"hit and run" in which he suffered serious injuries, including damage to his head, neck, and ribs. (*Id.* ¶¶ 18-19.)

Officer Mancuso responded to the dispatcher's call and arrived at the scene a short time later. (*See id.* ¶ 21.) Page alleges that Officer Mancuso arrested him for "misdemeanor destruction of property" relating to "the windshield of the vehicle that hit him" (*id.* ¶ 21), and an ambulance brought Page to the hospital (*id.* ¶ 26). On July 29, 2009, three days after his arrest, the United States Attorney's Office allegedly filed an information in D.C. Superior Court charging Page with destruction of property in violation of D.C. Code § 22-303. (*Id.* ¶ 25.)

According to the complaint, Page was remanded directly to the D.C. jail upon his release from the hospital on August 6, 2009, and while at the jail, he was placed in the general prison population and "subjected to a blanket strip search[]." (*Id.* ¶¶ 28-31.) Two days later, on Sunday, August 8, 2009, a Superior Court judge ordered Page released from jail. (*Id.* ¶ 35.) According to Page, although he had no other cases, warrants, or detainers, he was sent back to the D.C. jail after his release, strip searched again without individualized suspicion, and was not actually released until Monday, August 10, 2009. (*Id.* ¶¶ 36-42.) A judge on the Superior Court eventually dismissed the charges against Page for want of prosecution. (*Id.* ¶ 51.)

### B. Procedural History

Page initially filed an action against Officer Mancuso and the District of Columbia in Superior Court on July 25, 2012. Defendants removed the case to federal court on September 27, 2012. (Notice of Removal, ECF No. 1, at 1-2.) Page's complaint, amended in January, alleges various constitutional violations as a result of

Page's arrest and subsequent treatment at the D.C. jail. (*See* Compl. ¶¶ 54-69.) Specifically, in Count I, Page contends that Officer Mancuso violated his Fourth Amendment rights by unlawfully arresting him. (*Id.* ¶¶ 54-56.) In Counts II and III, Page contends that the District of Columbia is liable for strip searching and over-detaining him in violation of the Fourth and Fifth Amendments through principles of municipal liability as established in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 663 (1978). (*Id.* ¶¶ 57-65.) In Count IV, Page alleges that the District of Columbia is directly liable for over-detaining him in violation of the Fourth and Fifth Amendments, also through *Monell* municipal liability. (*Id.* ¶¶ 66-69.)

Defendants filed the instant partial motion to dismiss on January 18, 2013, seeking to dismiss the first three counts of the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. at 1.) With respect to Count I, Defendants first maintain that the facts set forth in the complaint do not allege that Officer Mancuso actually arrested Page, so she cannot be held liable. (*Id.* at 4-5.) In their reply, Defendants argue that even if Officer Mancuso did actually arrest Page, she is entitled to qualified immunity because she had probable cause for the arrest. (Defs.' Reply to Pl.'s Opp'n to Mot. to Dismiss ("Defs.' Reply"), ECF No. 11, at 2.) Defendants further argue that Counts II and III should be dismissed because Page has failed to allege sufficient facts to establish either supervisory municipal liability or direct municipal liability for the strip searches and over-detention. (Defs.' Mot. at 10-14.)

In his opposition to Defendants' motion to dismiss, Page attached a copy of the arrest reports that Officer Mancuso completed in connection with Page's arrest.

According to her report, Officer Mancuso responded to a dispatch call to assist another officer.  (Arrest Report, Ex. 1 to Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 10-1, at 2; Incident-Based Event Report ("Event Report"), Ex. 2 to Pl.'s Opp'n, ECF No. 10-2, at 1.)  Upon arrival on the scene, Officer Mancuso and another officer observed Murray's car "with the front windshield shattered."  (Arrest Report at 2; Event Report at 2.)  According to the arrest report, there were three men in the car, not two, as the complaint alleged.  (*Compare* Arrest Report at 2; Event Report at 2, *with* Compl. ¶¶ 10-20.)  Officer Mancuso then interviewed the men in the car, who told her that "while inside of a club [Page] made num[]erous contacts and harassed them.  When [they] left and started walking to their car, [Page] began to follow them." (Arrest Report at 2; Event Report at 2.)  The report states that the men told Officer Mancuso that, when they refused to give Page a ride home, he "got on the hood of the car and started smashing in the windshield with his foot."  (Arrest Report at 2; Event Report at 2.)  The driver of the car, "in fear of his life . . . started the vehicle and fled," which caused Page to fall to the ground.  (Arrest Report at 2; Event Report at 1-2.)  The report also specifies that Officer Mancuso arrested Page for felony destruction of property.  (Arrest Report at 1.)

Page now contends that Count I survives Defendants' motion to dismiss because the police report makes clear that Officer Mancuso was the arresting officer.  Page also maintains that Officer Mancuso's failure to investigate fully prior to arresting Page (who was unconscious when she arrived at the scene) negated probable cause for his arrest, and that, even if there were probable cause, the arrest was unlawful because it was a warrantless arrest for a misdemeanor committed outside the presence of an

officer. (Pl.'s Opp'n at 4-6.) Page further contends that Counts II and III survive Defendants' challenge because strip searches and over-detention are actionable constitutional violations. (*Id.* at 9.)

The Court held a hearing on Defendants' motion to dismiss on August 29, 2013.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Defendants seek partial dismissal of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. at 1.) A court must dismiss a claim for relief under Rule 12(b)(6) when the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, the court must accept as true all factual allegations in the complaint, and the plaintiff should receive the benefit of all inferences that can be derived from the facts alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Kramer v. United States*, 460 F. Supp. 2d 108, 110 (D.D.C. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Moreover, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must plead enough facts to make the claim seem plausible on its face. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the facts alleged in the

complaint "must be enough to raise a right to relief above the speculative level" (citation omitted)).

When evaluating a motion to dismiss under Rule 12(b)(6), a court generally does not consider matters beyond the pleadings. *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011). However, the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Id.* at 119 (internal quotation marks and citations omitted); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (same). For example, a plaintiff's complaint "necessarily relies" on a document when the complaint "quote[s] from and discuss[es a document] extensively." *W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 149 (D.D.C. 2013) (citation omitted). Even if a court considers a document attached to a motion to dismiss, the court must still "construe all well-pleaded factual allegations in the plaintiff's favor[,]" especially if the parties disagree about the nature of the evidence. *See, e.g.*, *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186-87 (D.D.C. 2001) (considering the tariff rates the defendant submitted with its motion to dismiss, but finding in favor of the plaintiff's factual contention that those tariff rates were not the ones agreed to by the plaintiff).

### B.  Motion for Summary Judgment

####    1.    Conversion

If the Court considers materials outside the pleadings on which the complaint does not "necessarily rely," it must convert the motion to dismiss into one for summary judgment.  *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 12(d)); *see also Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007) (same).[1] "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court."  *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citation omitted); *see also Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 493 (D.C. Cir. 1996) (Silberman, J., concurring in part and dissenting in part) ("[T]he judge's discretion on a FED. R. CIV. P. 12(b)(6) motion to dismiss extends only to whether to accept evidentiary or factual submissions that would convert the motion into one for summary judgment under Rule 56.").  In exercising this discretion, the "reviewing court must assure itself that summary judgment treatment would be fair to both parties[.]"  *Tele-Commc'ns of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985).  For example, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions[,]" *Kim*, 632 F.3d at 719, or, "if the parties have not been provided with notice or an opportunity for discovery[,]" the Court must ensure that the parties "have had a reasonable opportunity to contest the matters outside of the

---

[1] Specifically, Rule 12(d), entitled "Result of Presenting Matters Outside the Pleadings," states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

pleadings such that they are not taken by surprise[,]" *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 86 (D.D.C. 2012).

In this case, Page submitted five documents that were neither referenced in nor attached to the amended complaint in his opposition to Defendants' motion to dismiss, including Officer Mancuso's arrest reports from the incident. (*See* ECF Nos. 10-1 (Arrest Report), 10-2 (Event Report), 10-3 (Officer Mancuso's handwritten notes from the incident), 10-4 (the online docket for Page's D.C. Superior Court case), and 10-5 (the 911 dispatch report).) These materials pertain exclusively to Count I insofar as they shed light on the facts available to Officer Mancuso at the time of Page's arrest, and also demonstrate the extent of her investigation at the scene.

At the motions hearing, Defendants' counsel indicated that the motion to dismiss should be converted into one for summary judgment given the materials attached to Page's opposition. Although Page's counsel asked that the Court not convert to summary judgment, it was Page who submitted the outside materials and asked the Court to rely on them in deciding Defendants' motion. Moreover, the Court allowed both parties to argue orally the merits of converting the motion into one for summary judgment. Under these circumstances, converting the motion to dismiss into one for summary judgment as to Count I is fair to the parties, *see Tele-Commc'ns of Key West*, 757 F.2d at 1334, and takes neither party by surprise, *see Bowe-Connor*, 845 F. Supp. 2d at 86. Accordingly, the Court has considered all of the materials attached to Page's opposition with respect to Count I, and will exercise its discretion to convert Defendants' partial motion to dismiss, filed under Rule 12(b)(6), into a motion for summary judgment as to Count I of the complaint. *See Boritz v. United States*, 685 F.

Supp. 2d 113, 118 (D.D.C. 2010) (considering outside materials for certain 12(b)(6) arguments, thereby converting the motion to one for summary judgment with respect to particular counts, and excluding the materials from other 12(b)(6) arguments, treating the arguments regarding those counts as a motion to dismiss).

## 2.    The Summary Judgment Standard

Rule 56 makes clear that summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead decide only whether there is a genuine issue [of material fact] for trial." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks and citation omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In determining whether there is a genuine dispute about material facts, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See, e.g.*, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013); *see also Wiley*, 511 F.3d at 155. The moving party may successfully support its motion by identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must show more than

"[t]he mere existence of a scintilla of evidence in support of" his position; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Further, the non-moving party "may not rest upon mere allegations or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks omitted).

## III. ANALYSIS

### A. Officer Mancuso Is Entitled To Qualified Immunity

In Count I, Page contends that Officer Mancuso unlawfully arrested him in violation of his Fourth Amendment rights. (Compl. ¶¶ 54-56.) Specifically, Page argues that his arrest was unlawful because (1) it was an arrest for a misdemeanor committed outside the presence of an officer; (2) it was a warrantless arrest in the absence of probable cause or exigent circumstances; and (3) Officer Mancuso failed to investigate exculpatory evidence, including statements of eyewitnesses and the transcript of multiple 911 calls placed at the scene. (Pl.'s Opp'n at 5-6.) Defendants argue that this claim fails because Officer Mancuso is entitled to qualified immunity since a reasonable officer would have found probable cause for Page's arrest without investigating further, and therefore there is no constitutional violation. (Defs.' Mot. at 5; Defs.' Reply at 3.) As will be discussed in further detail below, the Court concludes that Officer Mancuso is entitled to qualified immunity because a reasonable officer could have found probable cause to arrest Page under the circumstances presented.

1.  <u>The Qualified Immunity Doctrine</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Elkins v. District of Columbia*, 690 F.3d 554, 567 (D.C. Cir. 2012) (same). The defendant bears the burden of pleading and proving the defense of qualified immunity. *Harlow*, 457 U.S. at 815.

The two-part test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), as modified by *Pearson v. Callahan*, 555 U.S. 223 (2009), governs the qualified immunity analysis. In *Saucier*, the Supreme Court directed lower courts to determine, first, if "the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and second, "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (internal quotation marks and citation omitted) (describing *Saucier*). "As laid out by the Supreme Court, the two pertinent questions in determining whether qualified immunity applies are (1) 'whether a constitutional right would have been violated on the facts alleged,' and (2) 'whether the right was clearly established' at the time of the violation." *Shaw v. District of Columbia*, No. 12-0538, 2013 WL 1943032, at *4 (D.D.C. May 13, 2013) (quoting *Saucier*, 533 U.S. at 201). In *Pearson*, the Supreme Court modified the *Saucier* analysis to give lower courts discretion to decide which of the prongs to address first. *Pearson*, 555 U.S. at 236; *accord Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *Rasul v. Myers*, 563 F.3d 527, 530 (D.C. Cir. 2009) ("[T]he *Saucier* sequence is [now]

optional and [] lower federal courts have the discretion to decide only the more narrow 'clearly established' issue 'in light of the circumstances of the particular case at hand.'" (quoting *Pearson*, 555 U.S. at 236)). Here, however, the Court need not proceed to address prong two of the *Saucier* test because Officer Mancuso did not violate Page's constitutional rights.

### 2. A Reasonable Officer Would Have Concluded That There Was Probable Cause To Arrest Plaintiff

It is beyond contest that it violates the Fourth Amendment when a police officer makes an arrest without a warrant or probable cause. *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006) ("[T]o comport with the Fourth Amendment, a warrantless search or seizure must be predicated on particularized probable cause."); *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) ("It is well settled that an arrest without probable cause violates the [F]ourth Amendment." (citation omitted)). Consequently, the only issue regarding the applicability of qualified immunity to Page's claim for false arrest (Count I) is whether Officer Mancuso arrested Page under circumstances in which there was no probable cause for his arrest. *See Cromartie v. District of Columbia*, 479 F. App'x 355, 356 (D.C. Cir. 2012) ("The existence of probable cause defeats [plaintiff's] claims for false arrest . . . as a matter of law." (citing *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977))).

Under well-settled precedents, "[p]robable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense.'" *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Whether probable cause exists is an objective determination that

involves examining "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "It must always be remembered that probable cause is evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Frazier v. Williams*, 620 F. Supp. 2d 103, 108 (D.D.C. 2009) (internal quotations marks and citation omitted); *see also Moorehead v. District of Columbia*, 747 A.2d 138, 147 (D.C. 2000) (in determining whether there is probable cause, "the court evaluates the evidence from the perspective of the officer, not the plaintiff").

Based on the facts alleged in the complaint and included in the documents that Page attached to his opposition, a reasonable officer could have found probable cause to arrest Page for destruction of property. The scene is not difficult to imagine: an officer receives a call on her police radio at four in the morning directing her to assist another police car. (*See* Arrest Report, ECF No. 10-1, at 2.) Upon arriving at the scene, the officer observes a vehicle with a broken windshield. (*Id.*) Two blocks away from the vehicle, an injured man lies unconscious in the street. (*Id.* (listing location of offense as the 1500 block of 23rd Street NW, and the location of the vehicle as 21st and P Street NW).) There is more than one man in the vehicle, and the officer interviews them. (*Id.*) These men, who say they are eyewitnesses to the incident, tell the officer their version of what happened: the man on the ground (Page) asked for a ride home, and when they refused his request, Page "got on the hood of the car and started smashing in the windshield with his foot[.]" (*Id.*) The eyewitnesses also tell the officer that Page fell to the ground when they tried to drive away from him. (*Id.*)

A reasonable officer presented with the statements of eyewitnesses and corroborating physical evidence could easily have found probable cause to believe the witnesses' account of what happened. Page concedes that Officer Mancuso's "notes show that she interviewed the person who assaulted the Plaintiff and another vehicle passenger" (Pl.'s Opp'n at 8; *see also* Arrest Report at 2 (indicating that she interviewed the individuals in the car); Event Report at 1 (same)), and that Officer Mancuso "actively participated in the investigation of the allegations against the Plaintiff." (Pl.'s Opp'n at 8.) Page also cannot deny that the account the witnesses relayed, if true, establishes a violation of District of Columbia law. *See* D.C. Code § 22-303 (providing, in relevant part, that a person who "maliciously injures or breaks or destroys . . . any public or private property, whether real or personal, not his or her own, of the value of $1,000 or more, shall be" fined or imprisoned, or both). Thus, the Court is satisfied that the facts known to Officer Mancuso at the time of the arrest— even when viewed in the light most favorable to Page, as summary judgment requires, *see Grosdidier*, 709 F.3d at 23—were sufficient to give a prudent officer reason to believe that Page had maliciously caused the damage to the windshield and, therefore, had committed an arrestable offense. *See Catlett*, 97 F.3d at 573; *see also United States v. McEachin*, 670 F.2d 1139, 1142-43 (D.C. Cir. 1981) (finding probable cause for an arrest where the officer relied on testimony of eyewitnesses whose "information was based on direct, personal observation"); *Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968) (finding probable cause where the officer received information from an eyewitness whom he reasonably believed was telling the truth); *Garay v. Liriano*, No.

11-1207, 2013 WL 1855742, at *13 (D.D.C. May 3, 2013) (finding probable cause based on the testimony of two eyewitnesses).

Page has not raised any genuine issues regarding the circumstances that Officer Mancuso confronted and that provided her with probable cause to arrest him. Instead, Page first contends that, regardless of what the officer observed and what the witnesses said, the arrest was unlawful because the officer did not have a warrant for his arrest. (Compl. ¶ 55; Pl.'s Opp'n at 1-2.) But the law is clear that, in the context of arrests outside the home, there is no need for a warrant when an officer has probable cause. *See Devenpeck*, 543 U.S. at 152 ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." (citations omitted)).[2]

Page further maintains that the arrest was unlawful because an officer may not arrest a person for a misdemeanor committed outside the officer's presence. (Compl. ¶¶ 55.) The record does establish that Officer Mancuso was not present when the alleged crime occurred. (Arrest Report at 2; Event Report at 1.) However, the materials attached to Page's opposition unequivocally demonstrate that Officer Mancuso arrested Page for *felony* destruction of property, not the misdemeanor version of this offense. (*See* Arrest Report at 1 ("Charges: DISTRUCTION [sic] OF PROPERTY (Felony)").) What is more, whether the common-law presence requirement for misdemeanor arrests is incorporated into the Fourth Amendment is not clearly established in this Circuit. *See Scott v. District of Columbia*, 101 F.3d 748, 754 (D.C. Cir. 1996); *Creecy v. District of Columbia*, No. 10-841, 2011 WL 1195780, at *5

---

[2] For an arrest *inside* the home, officers are required to have either a warrant or probable cause accompanied by exigent circumstances in order to make a lawful entry into the home to arrest an individual. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).

(D.D.C. Mar. 31, 2011) ("It is unclear whether the Fourth Amendment also contains this [presence requirement].").[3]  Consequently, even if Page had been arrested for committing a misdemeanor (he was not), the constitutional right not to be arrested for a misdemeanor committed outside the officer's presence was not "clearly established" in this jurisdiction at the time of the arrest, which means that Officer Mancuso would not be disqualified from claiming qualified immunity on this basis.  *See Pearson*, 555 U.S. at 232.

Finally, Page insists that Officer Mancuso had an obligation to conduct further investigation before arresting him.  (Pl.'s Opp'n at 1.)  In particular, Page faults Officer Mancuso for "fail[ure] to interview independent eyewitnesses and [to] review exculpatory evidence contained in the 911 call," (*id.* at 1-2), and he relies on *Pitt v. District of Columbia*, 491 F.3d 494 (D.C. Cir. 2007), in making this contention.  *See* (Pl.'s Opp'n at 5 (citing Pitt for the proposition that "the police may not ignore exculpatory evidence in charging a person with a criminal offense").)  Page's contentions are unavailing for at least two reasons.  First, it is clear beyond cavil that a tip from a single eyewitness can suffice for probable cause, *see McEachin*, 670 F.2d at 1142-43; *Garay*, 2013 WL 1855742, at *13, and Officer Mancuso appears to have spoken to at least three eyewitnesses.  (*See* Arrest Report at 2 (listing W-1, W-2, and C-1).)  Moreover, and perhaps more to the point, once probable cause has been found, an officer has no duty to conduct even *further* investigation.  *See Black v. District of Columbia*, 480 F. Supp. 2d 136, 139 (D.D.C. 2007) ("[T]he law is clear that a failure to

---

[3] Other circuits "have held that the Fourth Amendment does *not* incorporate the common-law presence requirement for misdemeanor arrests, and [therefore] that no cause of action exists under § 1983 unless the arresting officer lacked probable cause to believe a crime was committed."  *Scott*, 101 F.3d at 754 (emphasis added) (collecting cases).

investigate a suspect's alibi does *not* negate probable cause." (emphasis in original) (citing *Panetta v. Crowley*, 460 F.3d 388, 295-96 (2d Cir. 2006))).

The *Pitt* case is not to the contrary. In *Pitt*, the police conducted an investigation of a robbery that revealed *both* inculpatory *and* exculpatory evidence, but the defendant police officer presented an affidavit to the court that recounted all of the inculpatory evidence he had gathered but omitted the eyewitness testimony that the plaintiff was not the perpetrator. 491 F.3d at 498-500. There is nothing in this case that suggests Officer Mancuso either knew of or ignored plainly exculpatory evidence during her investigation. And if the purportedly exculpatory evidence that Officer Mancuso supposedly ignored was Page's own statement, the 911 dispatch report indicates that Page was unconscious after falling to the ground (ECF No. 10-5 at 2 (reporting "UNCONS PERSON ON THE SCENE")), and thus there was no reasonable opportunity for Page to report his version of events. In any event, the law is such that Page ultimately gains little from suggesting that Officer Mancuso should have waited for him to be revived and to make a statement prior the arrest, for an officer's failure to investigate an arrestee's protestations of innocence does not negate probable cause, either. *See Black*, 480 F. Supp. 2d at 139.[4]

At the end of the day, the record establishes that Officer Mancuso conducted an appropriately thorough investigation, and the facts as she knew them would have led a reasonable officer to conclude that there was probable cause to arrest Page. Consequently, this Court concludes that Officer Mancuso is entitled to qualified

---

[4] At the hearing on this matter, Page's counsel additionally suggested that Officer Mancuso should have listened to the actual 911 calls he made, or, in lieu of that, she at least had a pre-arrest duty to speak to the dispatch operator to learn what the caller (Page himself) had reported. No such duty exists, and the Court cannot fathom how such a requirement would work in practice.

immunity, and therefore grants summary judgment in her favor with respect to Count I

of the amended complaint (Page's Fourth Amendment unlawful arrest claim).

### B. The Complaint Fails To Allege Facts Sufficient To Establish That The District of Columbia Is Liable For Page's Overdetention And Strip Searches

In Counts II and III, Page contends that the District of Columbia is liable for

violations of his Fourth and Fifth Amendment rights through the principle of municipal

liability as established in *Monell v. Department of Social Services of New York*, 436

U.S. 658, 663 (1978). (Compl. ¶¶ 57-65.) Defendant has moved to dismiss these

counts, arguing that Page fails to meet the pleading requirements for municipal liability

under *Monell*. (Defs.' Reply at 2-3.) The Court agrees, and for the reasons detailed

below, will dismiss Counts II and III of the Plaintiff's amended complaint.

### 1. Municipal Liability

The principal of municipal liability permits individuals to sue municipalities and

local governments for constitutional violations. Allegations of municipal liability

require a two-part inquiry: first, the plaintiff must establish an underlying

constitutional violation; second, the plaintiff must show that there is a basis for

municipal liability. *See Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir.

2008); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

With respect to the second prong, in *Monell v. Department of Social Services of

the City of New York*, 436 U.S. 683 (1978), the Supreme Court limited municipalities'

liability for constitutional violations under § 1983 such that "*[r]espondeat superior* or

vicarious liability will not attach[.]" *City of Canton v. Harris*, 489 U.S. 378, 385

(1989) (citing *Monell*). Instead, under the rule promulgated in *Monell*, a city can only

be held liable under § 1983—either in its role as a supervisor of the employees who undertake unconstitutional actions or directly—when its *own* "policy or custom . . . inflicts the injury[.]"  436 U.S. at 694.

"There are four basic categories of municipal action [a p]laintiff may rely on to establish municipal liability:  (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference."  *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell*, 436 U.S. at 690-94).  In addition, to establish municipal liability, the court "must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation[.]"  *Baker*, 326 F.3d at 1306 (citation omitted).  Although "[t]here is no heightened pleading standard in a case alleging municipal liability for a civil rights violation[,]" the complaint "must include some factual basis for the allegation of a municipal policy or custom."  *Faison v. District of Columbia*, 907 F. Supp. 2d 82, 85 (D.D.C. 2012) (internal quotation marks and citations omitted), *aff'd,* No. 13-7021, 2013 WL 5975981, at *1 (D.C. Cir. Oct. 23, 2013); *see also Martin v. District of Columbia*, 720 F. Supp. 2d 19, 23 (D.D.C. 2010) (conclusory allegations regarding municipal liability are insufficient to state a claim for relief under § 1983); *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 214 n.2 (D.D.C. 2009) (the sufficiency of a plaintiff's allegations of liability under *Monell* "must be assessed under the standard set by the Supreme Court in *Twombly* and *Iqbal*").

2. <u>The Complaint Does Not Allege Sufficient Facts To Support Municipal Liability</u>

a. *Deliberate Indifference*

In Count II, Page alleges that the District of Columbia is liable for its deliberate indifference to the Fourth and Fifth Amendment violations D.C. jail officials inflicted upon Page when they subjected him to "over-detention" and "strip searches." (Compl. ¶¶ 57-62.) Courts in this district have found actionable similar claims for relief under § 1983. *See, e.g.*, *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 280, 291 (D.D.C. 2011); *Johnson v. District of Columbia*, 461 F. Supp. 2d 48, 50 (D.D.C. 2006), and Defendants appear to concede that the over-detention and strip searches violated Page's constitutional rights. Defendants' motion to dismiss focuses on the second prong of the *Monell* inquiry: they contend that the amended complaint contains only "fleeting reference[s]" and "conclusory statements" of deliberate indifference—without sufficient allegations of fact to support that claim—and therefore fails to state a claim for municipal liability under this theory. (Defs.' Mot. at 14.) Even assuming *arguendo* that Page has alleged sufficient facts to support a predicate constitutional violation, this Court agrees that he has failed to allege sufficiently that the District was deliberately indifferent to those violations.

Deliberate indifference liability occurs when a municipality knew or should have known of a risk that constitutional violations would occur, but did nothing to prevent those violations. *Baker*, 326 F.3d at 1306-07. This theory of municipal liability "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown ("Bryan Cnty.")*, 520 U.S.

397, 409 (1997)). The most common route to establishing deliberate indifference is to demonstrate the municipality's failure to train, which requires showing that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," yet they retain the program anyway. *Connick*, 131 S. Ct. at 1360. Failure to train liability usually requires showing a pattern of similar constitutional violations, but on rare occasions, a single unconstitutional incident may be sufficient to show deliberate indifference. *See id.* at 1360-61. In other situations, if city policymakers "know to a moral certainty" that situations will arise that would put certain constitutional rights at risk, the failure to train officers on how to respond to those situations "could properly be characterized as deliberate indifference to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10 (internal quotations marks omitted).

In addition to failure to train, a deliberate indifference claim can also be premised upon a municipality's deliberately indifferent hiring of a constitutional wrongdoer, if the plaintiff can demonstrate that the hired employee "was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bryan Cnty.*, 520 U.S. at 412 (emphasis in original). Deliberate indifference may also be based on allegations that "a municipality adopt[ed] a policy of inaction when faced with actual or constructive knowledge that its agents will likely violate constitutional rights[.]" *Poindexter v. D.C. Department of Corrections*, 891 F. Supp. 2d 117, 121 (D.D.C. 2012). Moreover, deliberate indifference can legitimately be claimed where there is "systemic and grossly inadequate . . . discipline[]" of city employees. *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988).

Significantly for present purposes, regardless of the particular method of deliberate indifference liability that a plaintiff claims, the complaint must meet the pleading standards of Federal Rule of Civil Procedure 8 as the Supreme Court has interpreted that rule. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. This means that, at a minimum, a plaintiff must identify the type of deliberate indifference that is being alleged and must also state its "factual basis." *See Faison*, 907 F. Supp. 2d at 85. The instant amended complaint falls woefully short of this pleading requirement. In the main, with respect to deliberate indifference, Page alleges that

> administrators, policy makers, supervisors and employees caused the intentional, unjustified over-detention of the Plaintiff by demonstrating deliberate indifference to the risk of constitutional injury of over-detention and unreasonable strip searches of the Plaintiff by deliberate indifference to the risk of constitutional injury of over detention as described above[.]

(Compl. ¶ 58.) This inartful paragraph mentions "deliberate indifference" twice, but fails to indicate the particular legal grounds for that assertion, much less any factual basis for the claim. To be sure, Plaintiff does describe the basic facts of the two strip searches that D.C. jail officers forced him to undergo in the initial parts of the complaint. (*Id.* ¶¶ 30-32, 38-39.) But at no point does Page connect these unfortunate incidents directly to the assertion that *the District* is at fault for the injury he suffered due to its own actions, such as because of a failure to train, discipline, or hire appropriately. Instead, Page relies on misleading general contentions—he maintains, for example, that "[a]t all relevant times [the] District of Columbia employees were acting within the scope of their employment[,]"[5] and that "over-detention and strip searches violated his Fourth [and Fifth] Amendment rights under the Constitution[,]"—

---

[5] This appears to be a mistaken reference to *respondeat superior* principles, which, as explained, do not suffice to establish municipal liability in this context. *City of Canton*, 489 U.S. at 285.

and he ultimately reasons that "[t]he District therefore is liable by virtue of its deliberate indifference[.]" (*Id.* ¶¶ 59-61.) These conclusory statements, which neither state any basis for municipal liability nor support such liability with corresponding assertions of fact, clearly miss the *Iqbal* and *Twombly* pleading-standard mark. *See Iqbal*, 556 U.S. at 678; *Faison*, 907 F. Supp. 2d at 85; *Martin*, 720 F. Supp. 2d at 23; *Smith*, 674 F. Supp. 2d at 214 n.2.

### b. *"Custom and Practice" Liability*

Page also alleges that the District of Columbia is liable for maintaining a "policy and practice of strip searching certain inmates, including the plaintiff" in violation of Page's Fourth and Fifth Amendment rights. (Compl. ¶¶ 58.) Although Page first alludes to this basis for liability in Count II (*see id.* ¶ 61), it is Count III that bears the heading "§ 1983 Monell Custom and Practice Direct Liability . . . for the Strip Search of the Plaintiff," and in that count, Page specifically alleges that "[t]he District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Plaintiff's strip search in violation of the Plaintiff's Fourth and Fifth Amendment rights." (*Id.* ¶ 64.)[6] Here, again, Defendants do not contest that an unreasonable strip search is a predicate constitutional violation, so the first prong for municipal liability is met. *See Baker*, 326 F.3d at 1306. And once again, Defendants argue that the count must be dismissed because the complaint falls far short of alleging facts sufficient to demonstrate a basis for municipal liability. (Defs.' Mot. at 9.)

---

[6] In contrast to Count II, which generally (and inartfully) alleges "supervisory" liability—*i.e.*, that the District failed to supervise the employees who committed the constitutional violations—Count III charges the District with directly violating Page's rights by adopting a custom and practice that promotes unconstitutional conduct. (*See* Compl. ¶¶ 64-65.)

Applicable law compels the result that Defendants request.  When a plaintiff seeks to establish "custom and policy" municipal liability under § 1983 in the absence of an express policy, she must allege "concentrated, fully packed, precisely delineated scenarios" as proof that an unconstitutional policy or custom exists.  *Parker*, 850 F.2d at 712 (internal quotations & citations omitted).  To clear this high hurdle, plaintiffs ordinarily couch "custom or practice" liability on allegations of "practices so persistent and widespread as to practically have the force of law."  *Connick*, 131 S. Ct. at 1359 (citations omitted); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) (recognizing that "if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware" then "the supervisor could realistically be deemed to have adopted a policy"); *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (same); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (same).  In addition, a complaint must also state facts "from which a link between [the] alleged misconduct and a D.C. policy, custom, or practice may be reasonably inferred."  *Brown v. Wilhelm*, 819 F. Supp. 2d 41, 44 (D.D.C. 2011).  This causal link requires facts suggesting that "the individual wrongdoer . . . acted pursuant to an unconstitutional policy, practice[,] or custom promulgated or sanctioned by the municipality."  *Lewis v. Gov't of District of Columbia*, 643 F. Supp. 2d 119, 122 (D.D.C. 2009) (citations omitted).

The instant complaint is entirely devoid of any such facts.  First of all, there is nothing in the complaint to establish a pattern or practice of strip searches.  As noted above, Page recounts the circumstances of his two strip searches, which occurred two days apart (Compl. ¶¶ 30-32, 38-39), and the complaint states that, on both occasions,

Page was "subjected to a blanket strip-search[]" as he entered the D.C. jail. (*Id.* ¶¶ 31, 38.) Two strip searches does not necessarily constitute a pattern, *see, e.g.*, *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (rejecting the argument that evidence of 13 "actual instances of misconduct" was "sufficient to demonstrate a pervasive pattern"), and Page provides no information about whether D.C. jail officials subjected any *other* individuals to strip searches in the absence of reasonable suspicion in the manner he describes, nor does he even allege that the D.C. jail had been conducting these strip searches on a regular basis.

The complaint is also devoid of any facts suggesting that D.C. correctional officers were required to conduct strip searches as a matter of policy or that they performed the strip searches at issue in this case pursuant to any such policy. In comparable § 1983 cases, plaintiffs have alleged that 40 identified inmates—and potentially hundreds more who were not yet identified but were anticipated to be part of the class—were all routinely strip searched upon return to the D.C. jail after they were ordered released. *Barnes v. District of Columbia*, 242 F.R.D. 113, 115, 118 (D.D.C. 2007). The plaintiffs in *Barnes* further alleged that the strip searches became an established practice in the D.C. jail due, in part, to problems in the inmate booking system and, in part, because jail staff grew to accept the searches as standard procedure, despite their knowledge that they were contrary to official policy. *Id.* Such allegations are sufficient to satisfy the relevant pleading standards, whereas a mere assertion in one's complaint that a city has a "custom and practice" of committing the complained-of constitutional violation is not. *See Iqbal*, 556 U.S. at 678; *Faison*, 907 F. Supp. 2d at 85; *Martin*, 720 F. Supp. 2d at 23; *Smith*, 674 F. Supp. 2d at 214 n.2.

Notably, the Court is not swayed by Page's insistence that the Court should overlook the pleading deficit in this case because certain cases from this district have previously recognized that the District of Columbia once had a policy of authorizing improper strip searching. *See, e.g.*, *Barnes*, 242 F.R.D. at 119; *Bynum v. District of Columbia*, 257 F. Supp. 2d 1 (D.D.C. 2002). Even if the Court were to take judicial notice of these cases, the strip search policy being addressed was one that existed at least seven years prior to the events that are the subject of Page's complaint, and the instant complaint does not allege facts that suggest that the District persisted in its unconstitutional actions such that Page's incarceration involved the same discredited policy, nor would it be appropriate to ground the District's liability in this case on any such inference. *See Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 26 (D.D.C. 2011) (noting that "a mere awareness of a problem [at an earlier time] and a need for improvement is not, as a matter of law, sufficient to impose municipal liability for an incident that occurred [at a later date]" (alterations in original) (citation omitted)).

Having failed to allege (even upon information and belief) facts that would permit a conclusion that (1) D.C. jail employees persistently, or even regularly, engaged in a policy or practice of unreasonable strip searches, and (2) Page was strip searched pursuant to that policy, Page has not adequately stated a "custom or policy" municipal liability claim. *See Connick*, 131 S. Ct. at 1359; *Praprotnik*, 485 U.S. at 130. Therefore, Count III must be dismissed. *See Faison*, 907 F. Supp. 2d at 85 (citation omitted) (dismissing claim when the complaint set forth "no factual allegations regarding the existence and enforcement of a municipal policy, custom[,] or practice that directly caused a violation"); *Brown*, 819 F. Supp. 2d at 41 (same).

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' Partial Motion to Dismiss must be **GRANTED**. Accordingly, the Court will enter summary judgment in favor of Defendants with respect to Count I of the amended complaint (unlawful arrest claim against Officer Mancuso), and will dismiss Counts II and III of the amended complaint (municipal liability claims against the District of Columbia). Only the municipal liability claim of Count IV, asserted against the District of Columbia, remains. An appropriate order accompanies this Memorandum Opinion.

Date:  December 4, 2013

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge